# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2009

Charles R. Fulbruge III
Clerk

No. 06-20882

Kevin Jamal Rogers

Petitioner-Appellant

v.

Nathaniel Quarterman, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and GARWOOD and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Kevin Jamal Rogers, a Texas state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Rogers seeks federal habeas relief from his Texas conviction for the murder of Dr. Lillie Lockhart. Rogers was fifteen years old at the time of the offense, but he was certified to stand trial as an adult. A jury found Rogers guilty of capital murder, and the trial court assessed an automatic life sentence. Rogers now argues that he received ineffective assistance of counsel when his trial attorney failed to preserve error as to the admissibility of Rogers's confession. For the following

1

reasons, we affirm the district court's denial of habeas relief.

## I.  FACTS AND PROCEEDINGS BELOW

On May 2, 1994, Dr. Lillie Lockhart was sexually assaulted and stabbed to death in her home.  Rogers's fingerprints were found at the crime scene. Houston police officers Steven Miller, Rubin D. Anderson, and Clarence Douglas went to Ryan Middle School where Rogers was a student, and placed him under arrest.  Miller informed Rogers he was arrested for the murder of Lockhart.  He read Rogers his Miranda rights and rights under section 51.09 of the Texas Family Code and asked Rogers if he understood each right after it was read, and Rogers indicated that he did.  After Rogers was handcuffed, he began to cry and said he had not killed anyone.  Rogers was then taken to Magistrate Carol Carrier.  His handcuffs were removed and the magistrate spoke with Rogers alone in her chambers.  She read Rogers his Miranda rights and his rights under section 51.09 of the Texas Family Code, and then went over them with him in plain English, asking after each explanation if he understood.  He said he did.

Rogers was then taken to an interview room and left alone for a short amount of time.  He was offered a soda.  He was then interrogated by the officers for three to five minutes.  During this time, Rogers claimed he was innocent. Anderson became frustrated and told Rogers to stop lying because his prints had been found at the crime scene.  Rogers began to tear up, so he was asked if he would like to speak with a particular officer about the offense.  Rogers chose Douglas, so Miller and Anderson left the room.  After 30–35 minutes, Douglas exited the interview room and stated that Rogers had confessed.

According to Douglas, Rogers was encouraged to talk about himself and his family prior to making his confession.  Rogers said he did not know where his mother was at that moment.  Douglas did not ask if Rogers wanted to speak with his mother prior to giving a statement, nor did Rogers ask to speak with his

2

mother. Douglas then asked Rogers to tell him what he did on the day of the murder, and eventually Rogers admitted to committing the murder. Rogers then agreed to give a written statement.

After providing the statement, Rogers was transported to another magistrate, Magistrate Blanca Villagomez. His handcuffs were removed and Rogers met with the magistrate alone. She advised Rogers of the charges against him and read him his rights pursuant to section 51.09 of the Texas Family Code. She then explained the rights in her own words and after each statement asked if Rogers understood; Rogers answered that he did. After reading the written statement, the magistrate asked Rogers if he was threatened or bullied by the officers, if he had been mistreated, and whether he had asked to speak to anyone. Rogers answered in the negative, and his answer was consistent with Magistrate Villagomez's personal observations that he had not been mistreated. The magistrate was fully convinced Rogers understood his rights, the nature of the allegations against him, and the contents of the written statement. She then asked Rogers to read the statement aloud, which he did, and she then laid her pen on her desk, and asked the defendant if he wanted to sign the statement. Rogers picked up the pen and signed the statement. Rogers at no time requested to see an attorney or to terminate the interviews.

Rogers was certified to stand trial as an adult. Rogers's attorney filed a pretrial motion to suppress the confession, but after a two day pretrial evidentiary hearing the motion was denied. The judge determined that Rogers's confession was made freely and voluntarily under both federal and state law, and that Rogers understood his rights and knowingly, intelligently, and voluntarily waived them. At the trial, Rogers's attorney asserted "no objection" when the confession was offered into evidence. Jurors were instructed to consider the statement only if they found, beyond a reasonable doubt, that the

3

statement was made voluntarily (and after the specified, required warnings). The jury then found Rogers guilty of capital murder. On direct appeal, the Texas Fourteenth Court of Appeals, in an unpublished opinion, found that any error pertaining to admission of the confession had been waived under Gearing v. State, 685 S.W.2d 326, 329 (Tex. Crim. App. 1986), when defense counsel affirmatively stated "no objection." Rogers v. Texas, No. 14-95-00871-CR (Tex. App.—Houston, Feb. 25, 1999). The Texas Court of Criminal Appeals refused discretionary review and the United States Supreme Court denied Rogers's petition for a writ of certiorari. Rogers v. Texas, 120 S.Ct. 1189 (2000).

In Rogers's application for state habeas relief, he (for the first time) claimed ineffective assistance of counsel because his defense attorney had waived any error pertaining to admission of the confession. The state habeas court, in its findings of fact, without an evidentiary hearing, determined that the confession was voluntary. The court also concluded that Rogers failed to show either that his attorney's actions fell below an objective reasonable standard under prevailing professional norms or that he "was improperly harmed such that the outcome of the case would have been different but for his attorney's deficient actions." Based on these findings and those of the state trial court, the Texas Court of Criminal Appeals denied Rogers's application for state habeas relief without a written order and without an evidentiary hearing.

Rogers thereafter, in August 2004, filed an application for a writ of habeas corpus in the Southern District of Texas under 28 U.S.C. § 2254, urging, among other claims, that his confession was involuntary and, again, that he received ineffective assistance of counsel. The district court, Judge Lee Rosenthal, in a thorough and well considered 46 page opinion, granted the state's motion for summary judgment and denied habeas relief after determining that the state court's findings under Strickland v. Washington, 104 S.Ct. 2052 (1984),

4

reasonably applied the law to the facts, consistent with clearly established federal law, as determined by the Supreme Court, and were not objectively unreasonable. [1] Having described the evidence and recited the numerous findings (some 31 plus 8 conclusions) of the state trial court, the district court reasoned as follows:

> "Given the record and these [state trial court] findings, Rogers fails to demonstrate a reasonable probability that but for trial counsel's failure to preserve the error, the state appellate court would have found Rogers's confession involuntary and inadmissible.
>
> Even assuming the issue of voluntariness had not been waived, this court has carefully reviewed the extensive record as to Rogers's confession, and independently finds the confession voluntary.
>
> . . .
>
> Rogers presents no clear and convincing evidence to rebut the presumed correctness of the state court's factual findings.[2]

---

[1]The only summary judgment evidence relevant to the contentions on this appeal is that in the record of Rogers's state pretrial, trial, direct appeal and related proceedings and the record of his state habeas proceedings.

[2]The district court had noted the following:
"The record shows that following Rogers's arrest, he was given the required magistrate warnings and that he told the magistrate he understood those warnings. He was taken to the juvenile detention center and given a beverage and an opportunity to use the bathroom. At the center, he told three officers that he was not involved in Lockhart's death. One of the officers told Rogers to stop lying because his fingerprints were found in Lockhart's house. Rogers said he would talk to Officer Douglas. After Rogers and Officer Douglas talked about school and sports for a while, Rogers confessed to killing Lockhart. Officer Douglas typed up the confession, and gave it to Rogers to read. Rogers made no changes to the confession. Rogers was taken before a juvenile magistrate, who gave Rogers his warnings and questioned him as to the confession. Rogers read the confession aloud to the magistrate. He said that it was his confession, and that he had no changes to make. According to the magistrate, Rogers read the statement well and was articulate when he spoke. When she asked him if he wanted to sign it, Rogers picked up a pen and signed it in her presence. The magistrate believed that Rogers understood the nature and content of his confession,

Nothing in the record shows involvement of mental coercion, denial of rights, intimidation, threats, or physical abuse in obtaining Rogers's confession. . . .

Here, as in Gachot [v. Stalder, 298 F.3d 414 (5th Cir. 2002)], the record shows no official, coercive conduct or denial of constitutional rights of such a nature that his confession was unlikely to have been the product of his essentially free and unconstrained choice. See Self v. Collins, 973 F.2d 1198, 1205 (5th Cir. 1992). The record as to the totality of the circumstances in the instant case shows that the confession was voluntary. See Evans v. McCotter, 790 F.2d 1232, 1235 n.1 (5th Cir. 1986). Rogers fails to show that the confession was involuntary and inadmissible under state law and that on direct appeal, the confession would have been set aside. Neither deficient performance nor prejudice is shown by counsel's failure to preserve error on the issue.
. . .

The state [habeas] court's findings under Strickland reasonably applied the law to the facts, consistent with clearly established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of

that he gave his statement knowingly, independently, and voluntarily, and that he voluntarily waived his rights.

The record further shows that Rogers was considered a 'slow' learner at school but was receiving passing grades in his classes and was not 'retarded.' He was described as alert, well-oriented, able to communicate ideas without difficulty, and without memory impairment. Although Rogers's clinical psychologist could not rule out the possibility that Rogers could be manipulated into, or was susceptible to, making a false statement, there is no direct or opinion probative summary judgment evidence that Rogers's confession was the result of manipulation or susceptibility. Officer Douglas denied telling Rogers that his mother would pick him up at the center, and the juvenile magistrate judge denied that Rogers told her that his confession was false. Officer Anderson denied cursing or yelling at Rogers or banging on the table in his presence. The trial court found the testimony of the officers and the magistrate judges 'credible and reliable and their testimony was in all ways believed by the Court.' . . . While the ultimate issue of voluntariness is a legal question requiring independent factual determination, subsidiary factual questions are entitled to the presumption of correctness under section 2254(d)."

correctness of the state [habeas] court's adjudication of Rogers's ineffective assistance claims. Rogers fails to show that but for trial counsel's alleged deficiency, the result of the proceedings would have been different. No basis for habeas relief is shown 28 U.S.C. § 2254(d)(1)."[3]

Rogers filed a timely notice of appeal. A judge of this court granted a certificate of appealability under 28 U.S.C. § 2253(a), limited to Rogers's claim that "he received ineffective assistance of counsel when his trial counsel failed to acquaint himself with Texas state law and waived a number of constitutional challenges to the legitimacy of his confession." Rogers in his instant appeal contends that his confession was involuntary under a totality of the circumstances approach and also because no parent or guardian of his was present.[4]

---

[3]The district court similarly rejected the related claim of counsel's ineffectiveness "in waiving his objection to the admission of the confession based on the lack of an opportunity to speak with his mother." The court stated that Rogers "fails to establish that but for counsel's failure to preserve this issue for appeal, the confession would have been held inadmissible on direct appeal for lack of parental access. Rogers demonstrates neither deficient performance nor prejudice under Strickland. This ground for habeas relief is denied."

[4]Among the challenges to the confession which Rogers had previously raised was that the police had neither a warrant nor probable cause for their arrest of Rogers on the morning of May 6, 1994. The state trial court denied this contention, as did the district court below, pointing, inter alia, to the state trial court's findings and conclusions based on the pretrial evidentiary hearing, as follows:

> "That on May 6, 1994, before [petitioner] was contacted by the police, the police had reasonable grounds and probable cause to believe that the defendant had engaged in delinquent conduct, namely capital murder.
> . . .
> [Petitioner] was a juvenile when arrested for a crime committed as a juvenile, and at the time of arrest peace officers had reasonable grounds and probable cause to believe that [petitioner] had committed delinquent conduct, namely capital murder."

Rogers in his brief to this court has not meaningfully addressed this ruling by the district court below and the state trial court, and hence has waived any contention that but for his

7

## II. DISCUSSION

## A. Standard of Review

We apply the standards of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, when a federal habeas petitioner's claim has been adjudicated on the merits in a state court proceeding, a federal court may only grant habeas relief if the state court's adjudication of the claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2). A state court's decision is contrary to clearly established Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court decisions, or if it confronts a set of facts that are materially indistinguishable from those present in a Supreme Court decision and arrives at a different result. Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000). A state court unreasonably applies clearly established federal law as determined by the Supreme Court if it identifies the correct governing principle established by the Supreme Court, but unreasonably applies that principle to the facts of the case. Brown v. Payton, 125 S.Ct. 1432, 1439 (2005). An unreasonable application is different from a merely incorrect or erroneous application; the state court decision must be an objectively unreasonable application. Williams, 120 S.Ct. at 1521-22. We defer to the state court's factual findings unless the petitioner rebuts those findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In reviewing the

counsel's failure to adequately preserve the matter for his state appeal the confession would have been ruled invalid on this basis, and we accordingly do not further address this matter.

district court's application of section 2254(d) to the state court decision, we review the district court's finding of fact for clear error and its conclusions of law de novo. Foster v. Johnson, 293 F.3d 766, 776 (5th Cir. 2002).

In his habeas petition, Rogers argues that he was denied effective assistance of counsel when his trial attorney failed to preserve error as to the admissibility of Roger's confession. Rogers's ineffective assistance claim is governed by the standard established in Strickland. Strickland provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. Id. at 2064. Under the first prong, Rogers must show that counsel's performance was deficient. Id. To establish deficient performance, Rogers must show that counsel's representation "fell below an objective standard of reasonableness." Id. This objective standard carries a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," considered as sound trial strategy. Id. at 2065. In reviewing counsel's performance, we make every effort to eliminate the distorting effects of hindsight and attempt to adopt the perspective of counsel at the time of the representation. Id.

Under the second prong, Rogers must show that his counsel's deficient performance resulted in prejudice. Id. at 2064. To satisfy the "prejudice" prong, Rogers must establish that, but for his counsel's deficient performance, there is "a reasonable probability" that the outcome of the proceeding would have been different. Id. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Rogers's Strickland claim fails if he cannot establish either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. Id. at 2069.

The state habeas court concluded that Rogers established neither deficient

9

performance nor prejudice with respect to his Strickland claim. The district court, applying the standard set forth in AEDPA, found that the state habeas court's findings under Strickland reasonably applied the law to the facts, consistent with clearly established federal law, and were not objectively unreasonable. Additionally, the district court reviewed the state court record and found there was no clear and convincing evidence to rebut the presumption of correctness of the state trial court's factual findings and adjudication. Rogers appeals to this court arguing that his trial counsel's performance was both deficient and resulted in prejudice when he failed to preserve error as to the admissibility of the confession. Therefore, the question before us is whether the state habeas court reasonably concluded that Rogers's ineffective assistance claim fails to satisfy either prong of Strickland.

B. Prong One: Deficient Performance

Rogers argues his trial counsel was deficient when, after the State introduced Rogers's confession at trial, defense counsel stated "no objection," which waived any issue as to the confession's admissibility on appeal and effectively destroyed his appellate rights in regard thereto. Under Texas law, there are two opportunities to question the voluntariness of an accused's statement. Tex. Crim. Proc. Code Ann. art. 38.22, § 6 (Vernon 2005). First, a defendant may request an independent finding by the trial court, in absence of the jury, via a pretrial suppression hearing. Id. If during this hearing the statement is found voluntary and admissible as a matter of law and fact, a defendant is given a second opportunity to challenge the confession by submitting evidence to the jury and having the jury instructed to disregard the statement unless it believes beyond a reasonable doubt that the statement was voluntary. Id. The jury must make its voluntariness determination without knowledge of the previous hearing or the court's ruling on the matter. Id.

10

In the case at hand, Rogers filed a pretrial suppression motion arguing his statement was involuntary and inadmissible. The trial court conducted a pretrial suppression motion and found the statement voluntary and admissible; thus, the court denied his motion. Under Texas law, when a trial court overrules a pretrial suppression motion, the accused need not object to the admission of the same evidence at trial to preserve the complaint. Gearing v. State, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985). However, when the accused affirmatively asserts during trial that he has no objection to the evidence's admission, he waives any complaint regarding its admission notwithstanding his pretrial objection. Id. When Rogers's defense counsel stated "no objection" to the admission of the confession, the appellant waived any error he may have previously preserved regarding the admissibility of his statement. Rogers argues that by stating "no objection" in front of the jury, he not only lost any chance to appeal the admission of the statement, but his defense counsel in effect conceded to the jury that the confession was voluntary and admissible.

Assuredly, defense counsel could have avoided his mistake. For example, he could have filed a motion with the court requesting that he not be required to make a statement in open court when Rogers's statement was introduced or he could have approached the bench to object to its introduction. However, it is unlikely that defense counsel's error affected the jury. Defense counsel had argued from the very beginning that the statement was involuntary, and he presented evidence to the jury to suggest involuntariness. Further, the jury was not told about the suppression hearing or the court's previous ruling, and the jury was instructed that it would be the ultimate arbiter as to the issue of voluntariness—and there is no reason to assume they believed otherwise.

C. Prong Two: Prejudice

In any event, Rogers has not carried his burden of showing that there is

a reasonable probability, as defined in Strickland, that but for his counsel's said alleged deficiency the result of the proceeding would have been different.

The district court, having "carefully reviewed the extensive record as to Rogers's confession, . . . independently" found "the confession voluntary;" it held Rogers had presented "no clear and convincing evidence to rebut the presumed correctness of the state [trial] court's factual findings;" that "[t]he record as to the totality of the circumstances in the instant case shows that the confession was voluntary;" that "Rogers fails to show that the confession was involuntary and inadmissible under state law and that on direct appeal, the confession would have been set aside;" and that "Rogers fails to show that but for trial counsel's alleged deficiency, the result of the proceedings would have been different." We agree with these holdings.

When determining the voluntariness of a suspect's confession, both juveniles and adults are subject to a "totality of the circumstances" approach. Gachot v. Stalder, 298 F.3d 414, 418 (5th Cir. 2002). Under this approach, the court considers the suspect's age, experience, education, background, intelligence, and whether the suspect has the capacity to understand the warnings given to him, the nature of his rights, and the consequences of waiver. Id. at 418–19. The circumstances of the interrogation, such as its length, location, and continuity are also considered. Withrow v. Williams, 113 S.Ct. 1745, 1754 (1993). A statement is involuntary if there existed official, coercive conduct that made it unlikely the statement was a product of the individual's free choice. Colorado v. Connelly, 479 U.S. 157, 164 (1986); Self v. Collins, 973 F.2d 1198, 1205 (5th Cir. 1992).

The state trial court made extensive factual findings,[5] and this Court must

---

[5]Written findings were made nearly two years after the pretrial suppression hearing when the Fourteenth Court of Appeals remanded the case and ordered the state trial court

defer to those findings. 28 U.S.C. § 2254(e)(1). Most significantly, the state trial court found that the testifying arresting and interrogating officers and both magistrates were credible and reliable witnesses whose testimony was believed in all respects by the state trial court. The state trial court found that Rogers was taken to a magistrate and read his rights in compliance with federal and Texas law. The magistrate asked Rogers if he understood his rights and explained in plain English what each right meant and how it applied to Rogers. During this exchange, the magistrate determined that Rogers was not in any way made uncomfortable or mistreated by the police. Rogers was then taken to an interrogation room where he was given something to drink and interviewed by Douglas. The trial court found that during this interview, Rogers intelligently, knowingly, and voluntarily waived his rights and confessed to the murder.

After the interview, officer Douglas typed out Rogers's statement and gave him an opportunity to read it and make corrections. Rogers was then taken to another magistrate, who again read the required warnings, asked if Rogers understood, and explained the rights in plain English. The magistrate asked Rogers if he had been mistreated, Rogers said no, and the magistrate personally believed he had not been mistreated. The magistrate was fully convinced that Rogers understood his rights, the nature of the allegations, and the written statement. She asked Rogers to read his statement aloud, and after he had done so, she laid her pen on her desk and asked if Rogers wanted to sign the statement. Rogers picked up the pen and signed the statement freely. The trial court further found that Rogers at no time requested to see an attorney or to

---

to provide such findings. There is no reason to believe this passage of time rendered Judge Duggan's factual findings somehow inadequate. Well after the written findings were made and filed the Court of Appeals rendered its decision.

terminate the interview, and he had not been coerced, intimidated, threatened, or promised anything by the officers or magistrates. The federal district court determined that these findings were supported by the record, and we agree.

Based upon these findings, a state court would in all likelihood find the confession admissible. In Texas, the state court on direct appeal must review the trial court's application of the law to the facts de novo. In re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002). However, the appellate court must defer to the trial court's findings of fact, Fierro v. State, 706 S.W.2d 310, 316 (Tex. Crim. App. 1986), and the trial court is the sole judge of witness credibility and the weight given to testimony, Burdine v. State, 719 S.W.2d 309, 318 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940 (1987). Nothing in the court's findings of fact suggest Rogers's confession was coerced or taken without complying with federal or state law, nor has Rogers rebutted the trial court's factual findings by clear and convincing evidence. Thus, even had error been preserved, there is no reasonable probability (nor any probability sufficient to undermine confidence in the outcome) that an appellate court, bound by the trial courts' factual findings, would determine that the confession was involuntary or inadmissible.

Rogers disagrees, arguing that he received inadequate warnings, which rendered his statement inadmissible. At the time of Rogers's arrest and trial, Section 51.09 of the Texas Family Code governed the required procedures for obtaining an admissible juvenile statement. The law provided, in pertinent part, that a child's written statement was admissible in a future proceeding if: (1) a magistrate informed the juvenile of his Miranda rights prior to the making of a written statement; (2) the statement was signed in front of the magistrate with no law enforcement officers present; and (3) the magistrate was convinced the juvenile made the statement voluntarily and knowingly, intelligently, and

14

voluntarily waived his rights.[6]  Rogers argues he was not properly apprised of his Miranda rights–specifically his right to terminate the interrogation. However, Rogers's own signed confession explicitly states: "I may remain silent and not make any statement at all . . .; I have the right to have an attorney present . . .; I have the right to terminate the interview at any time." Magistrate Villagomez was present at the time Rogers signed his confession and testified that Rogers in her presence read the entire statement aloud prior to signing it. Further, both magistrates testified that they had read Rogers his rights in conformity with Texas Family Code § 51.095, explained those rights in plain English, and asked Rogers if he understood each right as it was explained to him.  The state trial court also found the testimony of both magistrates to be credible in all aspects and determined, inter alia, that Rogers "did not ask for an attorney at any time while talking with police nor did he request to terminate any interviews."  Because the warnings given by the magistrates and included within Rogers's statement meet the standard set forth in Miranda v. Arizona, 86 S.Ct. 1602 (1966), as well as the heightened requirements imposed by Texas Family Code § 51.09, Rogers's argument is unconvincing.[7]

---

[6]In 1997, the Texas Legislature amended section 51.09 of the Texas Family Code by moving the substance of subsections (b), (c), and (d) to section 51.095; however, the 1997 amendments did not change the provisions of former section 51.09 at issue in this case. See Act of May 14, 1997, 75th Leg., R.S., ch. 1086, § 4, 1997 Tex. Gen. Laws 4179, 4181-83 (current versions at Tex. Fam. Code Ann. §§ 51.09 & 51.095 (Vernon 2002 & Supp. 2008). Therefore, we will refer to the current section for purposes of this opinion.

[7]As provided in § 51.09 of the Texas Family Code as then in effect, for a juvenile's in custody statement to be admissible, it must be shown, inter alia, that before seeking the statement the juvenile was advised by a magistrate, among other things, that
> "(A) the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;
> (B) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;
> (C) if the child is unable to employ an attorney, the child has the right

15

Additionally, Rogers argues that his statement was involuntary because at the time of his arrest he asked for his mother and his request was refused by the officers. To support his claim, Rogers relies on the trial testimony of Jean Williams, a teacher and part-time assistant principal at Rogers's school.[8] Williams testified that, when she delivered Rogers to the room at the school where officers were waiting, Rogers was crying and, in the presence of the officers, asked to speak to his mother. She did not testify, however, that Rogers made his request to the waiting officers or that the officers refused the request. She also did not indicate whether Rogers's statement was actually heard by the officers because her back was turned and several conversations were taking

---

> to have an attorney appointed to counsel with the child prior to or during any interviews with peace officers or attorneys representing the state;
>> (D) the child has the right to terminate the interview at any time;
>> (E) if the child is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and the child may be tried as an adult; . . ."

Further:
> "(G) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, . . . The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

> The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney . . . and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights."

[8]Williams did not testify at the pretrial suppression hearing. Rogers claims that defense counsel's assistance was also ineffective due to his failure to call Williams at that hearing. Because Rogers failed to raise this specific claim in his federal habeas petition or before the district court, we do not consider it. See Beazley v. Johnson, 242 F.3d 248, 271 (5th Cir. 2001).

16

place at the time.  Significantly, all three officers testified that Rogers did not request his mother or an attorney at any point and their testimony was found credible in all aspects by the state trial court.  In fact, Rogers own testimony on this point is inconsistent.  At the suppression hearing, Rogers did not state that he requested his mother prior to his arrest or while in custody.  Before the jury, however, Rogers testified as to having requested his mother after giving his statement to Douglas.  Based on these facts and inconsistencies, Rogers's second argument is also unconvincing.

Moreover, an independent review of the record reflects the confession was voluntary.  The record showed that Rogers has a low IQ and was a slow learner, and, as Rogers asserts in his brief in this court, citing his mother's testimony at the pretrial hearing, he could only read at a third or fourth grade level.  However, the record also shows that he was in the eighth grade, passing all his classes, and he was not mentally retarded.  Moreover, Magistrate Villagomez testified that Rogers read his statement aloud to her and read it well.  He was also described as alert, well-oriented, and able to communicate ideas without difficulty.  Rogers argues that his low IQ and learning disabilities show involuntariness because he could not intelligently or knowingly waive his rights.  However, this evidence was presented during trial and both the state trial judge and the jury had the opportunity to evaluate Rogers's demeanor and mental acuity, and both found he was capable of understanding his rights and confessed voluntarily.  Rogers has not produced any evidence to rebut these factual findings by clear and convincing evidence.

Rogers further argues that he was subjected to coercive interrogation tactics which rendered his confession involuntary. Rogers alleges that Anderson was yelling and beating the table, while Douglas offered him a soda, and later promised Rogers that his mother could take him home if he gave a statement.

17

However, there is no probative evidence that Rogers's confession was the result of manipulation, coercion, or inducement. Anderson denied cursing, yelling, or banging on the table, and Douglas denied telling Rogers that his mother could take him home. Magistrate Villagomez testified that, based upon her personal observations and Rogers's own statements, the officers had not mistreated him in any way. She also testified that Rogers had made no indication that the confession was false or the product of inducement. Most significantly, the trial court found the testimony of the officers and the magistrates credible, reliable, and in all ways believed.

Cases which have found a juvenile's confession involuntary often include some form of mental coercion, denial of rights, intimidation, threats, or physical abuse in obtaining the confession. For example, a fifteen-year old's confession was found involuntary after the boy was taken from his home in the middle of the night and subjected to relentless questioning. Haley v. Ohio, 68 S.Ct. 302 (1948). The boy had been kept in custody for over three days without being taken before a magistrate or allowed to see a parent or attorney. Id. at 304. He was not informed of his right to counsel. And once before the magistrate, the boy appeared "bruised and skinned." Id. at 303. Similar to Haley, this court found an eleven-year old's confession involuntary after the child had been held in custody, unaccompanied by a parent or lawyer, for over three days. Murray v. Earle, 405 F.3d 278, 288 (5th Cir. 2005). The girl was found to be of "below-normal intelligence," had no experience with the criminal justice system, was only briefly informed of her rights prior to the interrogation, and the police told her that everyone "knew" what happened and she could only help her family by telling the truth. Id. at 288–289. The procedures of section 51.09, Texas Family Code, were not followed, and the girl was never taken before a magistrate. Id. at 284.

18

The coercion present in Haley and Murray starkly contrasts with two other cases where juveniles' confessions were found voluntary. In Fare v. Michael C, 99 S.Ct. 2560 (1979), a sixteen-year old's confession was found to be voluntary where there was no evidence that the juvenile had been "worn down" by improper interrogation tactics, lengthy questioning, trickery, or deceit. Id. at 2572–73. The boy had been arrested several times and had considerable experience with police. Id. at 2572. He was told he was being questioned in connection with a murder, his rights were explained fully, and no facts indicated he was unable to understand his rights. Id. Similarly, this Court found a fifteen-year old's confession to the murder of his parents was voluntary after he freely agreed to go to the sheriff's office to answer questions. Gachot v. Stalder, 298 F.3d 414, 420–21 (5th Cir. 2002). The boy was accompanied by his older half brother, was repeatedly advised of his rights, and the officers were "non-oppressive," treating him with "kid gloves." Id. at 420. He was not subject to physical abuse or relentless questioning, or confronted with "spurious untruths." Id.

Rogers's situation is much more akin to the voluntary confessions in Gachot and Fare, than those in Murray and Haley. Like the juveniles in Murray and Haley, Rogers had no experience with the criminal justice system and was unaccompanied during the interrogation. Also, like the eleven-year old in Murray, Rogers functioned at a younger age intellectually. While these factors indicate Rogers may have been vulnerable to coercion, Rogers was not continuously or lengthily interrogated, and he was detained for a period of hours rather than days. He, like the juveniles in Gachot and Fare, was continuously apprised of his rights, and while he may have functioned at a younger age intellectually, the record indicated he understood those rights. Most significantly, he was not subjected to physical abuse, mental coercion, trickery,

19

or deceit like the children in Murray and Haley. The officers were truthful when they represented to Rogers that his fingerprints had been found at the scene, and there is no evidence that the officers somehow induced Rogers's confession. Moreover, Rogers was afforded the full, extensive protections of section 51.09 of the Texas Family Code.

Considering the aforementioned cases and the totality of the circumstances, it is highly unlikely that a court would determine Rogers's confession was involuntary. The evidence shows that he was not subjected to coercive interrogation tactics or denied any constitutional rights. He was repeatedly apprised of his rights, understood them, and waived them intelligently, knowingly, and voluntarily. These findings are overwhelmingly supported by the record.

Finally, Rogers argues he was prejudiced by defense counsel's mistake because his inability to appeal the voluntariness of his confession made it impossible for an appellate court to implement a new rule requiring parental access during juvenile interrogation. The Fourteenth Court of Appeals acknowledged Rogers's request for a rule requiring parental access, but it did not resolve the issue due to Rogers's procedural default. This Court is aware that several jurisdictions have implemented stronger procedural safeguards to protect juvenile suspects, who are often more vulnerable than their adult counterparts. See e.g., People v. Burton, 491 P.2d 793, 797–98 (Cal. 1971); People v. Castro, 462 N.Y.S.2d 369, 379 (N.Y. Sup. Ct. 1983); Smith v. State, 343 S.E.2d 521 (N.C. 1986). Texas, like other states, has addressed this increased vulnerability through the implementation of Texas Family Code § 51.09, which significantly increased the admissibility requirements for and protections concerning statements made by juvenile defendants. This court has no reason to speculate that a Texas appellate court would impose additional per se

requirements to further protect juveniles after the Texas legislature has clearly determined that section 51.09 offers suitable protection.[9]

Thus, there is no reasonable likelihood that the Fourteenth Court of Appeals, the Texas Court of Criminal Appeals, or the United States Supreme Court would have found the confession to be involuntary or inadmissible had that issue been properly before it, and Rogers has failed to show that there is any reasonable probability (or probability sufficient to undermine confidence in the outcome) that but for counsel's failure to preserve for appeal the claim that the confession was inadmissible, the case would have had a different result.

## III. Conclusion

The state court's findings under Strickland reasonably applied the law to the facts, consistent with clearly established federal law as determined by the Supreme Court, and were not objectively unreasonable. An independent review of the record does not reveal any clear and convincing evidence to rebut the presumption of correctness of either the state trial court's or the state habeas court's findings and adjudication of Rogers's ineffective assistance claims. Assuming, arguendo, that counsel's conduct was unreasonable, Rogers fails to show a reasonable likelihood that, but for counsel's conduct, a state appellate or habeas court, or a federal habeas court, or the United States Supreme Court, would have found his confession involuntary.

For the foregoing reasons, the district court's denial of habeas corpus relief is

AFFIRMED.

---

[9]The United States Supreme Court in Fare plainly indicated that the totality of the circumstances test, not a rule of per se exclusion, applies to the denial of a custodially interrogated juvenile's "request for . . . his parents." Id., 99 S.Ct. at 2572. See also, e.g., Gilbert v. Merchant, 488 F.3d 780, 782-83 (7th Cir. 2007) (same).