**REVISED MAY 31, 2016**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70013

United States Court of Appeals
Fifth Circuit

**FILED**

May 26, 2016

Lyle W. Cayce
Clerk

ERICK DANIEL DAVILA,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-506

Before DENNIS, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

      Erick Daniel Davila was convicted of capital murder and sentenced to death. After pursuing relief in state court, he brought a Section 2254 action. The district court denied relief. He now seeks a certificate of appealability ("COA") from this court. We deny him a COA.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-70013

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, a Texas jury found Davila guilty of capital murder. Davila had opened fire with a semiautomatic assault rifle on a birthday party at a home in Fort Worth, Texas, killing Annette Stevenson and her five-year-old granddaughter, Queshawn Stevenson. The birthday party was for another of Annette's granddaughters. All the guests were children or adult women, except for Jerry Stevenson, Queshawn's father.

Around 8:00 p.m., many guests were on the porch when a black Mazda passed by the house slowly, driven by a man with a gun. A few minutes later, Cashmonae Stevenson, an 11-year-old at the party, saw a man run in front of the house across the street and begin shooting at the guests on the porch. Panic ensued as the guests tried to get inside the house. Multiple children, including Cashmonae, and adult guests were shot and injured. Annette and Queshawn were the only ones to die from their injuries.

A police investigation led to the arrest of Davila, who gave four written statements over the course of seven hours in custody after his arrest. Davila was a member of the Bloods gang. Davila's third statement included admissions that he and his friend had been driving around in his girlfriend's black Mazda and decided to have a "shoot em up." He said that he was trying to shoot "the guys on the porch and . . . trying to get the fat dude." He stated he did not know the name of the "fat dude," but recognized him.[1] As for the "guys on the porch," Davila appeared to have mistaken some adult women at

---

[1] Jerry Stevenson testified that neither he nor anyone who lived at Annette Stevenson's house was associated with the rival Crips gang, although he had friends who were Crips. A few weeks before this shooting, Stevenson had intervened in an argument that occurred in front of Annette's house between some of his family members and members of the Bloods gang. A security guard who witnessed the argument testified that Davila was one of the men with whom Stevenson was arguing.

the party for men because the only male at the party was Jerry. This confession, along with other evidence, was presented at Davila's trial and led to his conviction.

At the punishment phase, the State introduced aggravating evidence: Davila had attempted to escape from jail and seriously injured a detention officer in the process; he had committed an aggravated robbery and an additional murder only two days before the birthday party shooting; he also had been convicted for burglary of a habitation in 2006.

For the mitigation case, the defense offered testimony from Davila's father, sister, mother, maternal aunts, and a psychologist, Dr. Emily Fallis. In summary, they testified that Davila had been raised solely by a teenage mother, with his alcoholic father having been incarcerated for murder since he was very young. Davila's mother told him that he was conceived when his father sexually assaulted her. She was neglectful, abusive, and hateful towards Davila and his sister, and even made them leave the house as teenagers. Davila's sister testified about physical fights she had with their mother. After deliberation, the jury returned a sentence of death.

The Texas Court of Criminal Appeals affirmed Davila's conviction on direct appeal, and the United States Supreme Court denied a writ of certiorari. Davila then pursued state habeas relief. He petitioned the convicting court for a writ of habeas corpus, which was denied. He then sought a writ of habeas corpus from the Court of Criminal Appeals, which adopted the convicting court's findings and conclusions and denied relief. He again petitioned the Supreme Court for a writ of certiorari, which was denied.

Davila then sought federal habeas corpus relief under 28 U.S.C. § 2254. He presented seven constitutional claims:

1) The evidence at trial was insufficient to support his conviction;

No. 15-70013

2) He received ineffective assistance of trial counsel, appellate counsel, and state habeas counsel;

3) His written confession to this offense was erroneously admitted;

4) His written confession to a separate murder was erroneously admitted;

5) The trial court erroneously denied his motion to preclude the death penalty and declare Article 37.071 of the Texas Code of Criminal Procedure unconstitutional;

6) The trial court erroneously overruled his objection to Texas's "10-12 Rule"; and

7) The trial court erroneously instructed the jury about the burden of proof on mitigation.

In addition to his application for federal habeas relief, he sought an evidentiary hearing and a stay and abeyance to allow him to exhaust an ineffective assistance claim in state court.  The district court reviewed the state court proceedings with the deference required by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), then denied habeas relief.  The court also denied the motion for an evidentiary hearing and a stay and abeyance. The court did not certify any issue for appeal.  Davila now seeks a COA from our court to allow him to proceed on appeal.  *See* 28 § U.S.C. 2253(c)(1)(A).

## DISCUSSION

We grant a COA only upon "a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  When the district court denies an applicant's constitutional claims on the merits, a COA will only issue if the applicant shows "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-*

*El v. Cockrell*, 537 U.S. 322, 327 (2003).  When the district court denies an applicant's claims on procedural grounds, a COA will only issue if the applicant shows that reasonable jurists would debate whether the district court was correct in its procedural ruling and whether the petition states a valid claim on the merits.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

AEDPA requires federal district courts to give deference to state court decisions.  *See Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).  A federal court must not grant habeas relief regarding any claim adjudicated on the merits in state court proceedings unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

A state court's adjudication is "contrary to" Supreme Court precedent if: (1) the state court reaches the opposite conclusion from the Supreme Court on a question of law; or (2) the state court arrives at the opposite result of Supreme Court precedent in a case involving materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  A state court's decision is "an unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).  Even if we find that a state court incorrectly applied clearly established federal law, we can only correct the state court if the incorrect application was also objectively unreasonable.  *Id.*

A determination of facts by a state court is presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "This presumption of correctness attaches not only to explicit findings of fact, but

also to 'unarticulated findings which are necessary to the state court's conclusion of mixed law and fact.'" *Pippin*, 434 F.3d at 788 (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)).

We must conduct a "threshold inquiry into the underlying merit" of Davila's habeas claims to determine whether a COA should issue. *Miller-El*, 537 U.S. at 327. This inquiry "does not require full consideration of the factual or legal bases" of the claims. *Pippin*, 434 F.3d at 787.

### I. Sufficiency of the Evidence Claim

Davila asserts that there was insufficient evidence to support his conviction for capital murder because capital murder in Texas requires specific intent to kill more than one person. He claims the evidence showed he only intended to kill one person: Jerry Stevenson.

The district court denied this claim because Davila's written statement evidenced intent to kill more than one person. Davila's statement included the following: "we were going to have a shoot em up . . . The fat dude was in the middle of the street. The other 3 were on the porch. . . . I was trying to get the guys on the porch and I was trying to get the fat dude." The district court decided that the Texas Court of Criminal Appeals did not unreasonably apply clearly established federal law to assess sufficiency of the evidence, as set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).

Davila argues that a COA should issue on whether his legal sufficiency claim should be analyzed under Section 2254(d)(1) or (d)(2). Davila asserts that the district court did not address his claim that the Texas Court of Criminal Appeals made unreasonable determinations of the facts under Section 2254(d)(2), but instead just analyzed his claim under Section 2254(d)(1). An applicant establishes legal error in the state court proceedings under Section 2254(d)(1), but factual error under Section 2254(d)(2). *See Lewis*

No. 15-70013

*v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012). A claim of insufficient evidence is a mixed question of law and fact, which we review under Section 2254(d)(1). *See Miller v. Johnson*, 200 F.3d 274, 281, 286–88 (5th Cir. 2000). Accordingly, we deny a COA on this sub-issue because reasonable jurists would not debate the district court's resolution in light of our precedent.

We must decide whether the Texas Court of Criminal Appeals' rejection of Davila's claim that the evidence was insufficient "was an objectively unreasonable application of the clearly established federal law" as set out in *Jackson*, 443 U.S. 307. *See Martinez v. Johnson*, 255 F.3d 229, 244 (5th Cir. 2001). Evidence is sufficient if, viewing it in the light most favorable to the state prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. We look to state law to determine the substantive elements of the crime. *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012). Murdering more than one person in the same criminal transaction qualifies as capital murder in Texas. TEX. PENAL CODE § 19.03(a)(7)(A). Murder requires "intentionally or knowingly caus[ing] the death of an individual." *Id.* § 19.02(b)(1). Under Texas law, a person is still "criminally responsible for causing a result if the only difference between what actually occurred and what he desired . . . is that . . . a different person . . . was . . . harmed." *Id.* § 6.04(b)(2).

Davila's third written statement reveals an intent to kill at least four persons. Because there was only one man at the party, Jerry Stevenson, Davila mistook some of the adult women for men. Under Texas law, Davila's intent to kill four men transferred to the killing of Annette and Queshawn Stevenson. A rational juror could look at that evidence and decide beyond a reasonable doubt that Davila intentionally or knowingly killed more than one person. Reasonable jurists would not find the district court's resolution debatable or wrong. We deny a COA on this claim.

7

No. 15-70013

## II.     *Ineffective Assistance of Appellate Counsel Claim*

Davila contends that he is entitled to a COA on his claim that his counsel in the direct appeal from his conviction was ineffective for failing to raise an allegedly erroneous jury instruction on appeal.

During deliberations, the jury sent this written question to the trial judge: "In a capital murder charge, are you asking us did he intentionally murder the specific victims, or are you asking us did he intend to murder a person and in the process took the lives of 2 others[?]"  The trial judge responded by giving the jury an instruction that for the first time tracked the Texas transferred-intent statute: "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated or risked is that: a different person was injured, harmed, or otherwise affected."   This additional instruction was submitted along with another instruction repeating the definitions for "intentionally" and "knowingly."  Davila's trial counsel objected to the instruction on the basis that it should not have been sent to the jury until more deliberation had occurred.  Davila now claims that counsel should have argued on appeal from the conviction that the additional jury instruction incorrectly stated Texas law because he had to have specific intent to murder more than one person, but the jury charge permitted him to be convicted of capital murder even if he only intended to kill Jerry Stevenson.

Because Davila did not raise this ineffective appellate counsel claim in state habeas proceedings, the district court held it was procedurally defaulted. The district court rejected Davila's argument that *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), should extend to excuse ineffective assistance of appellate counsel claims that are defaulted due to state habeas counsel's ineffectiveness.  We have addressed this possible

8

extension of *Martinez* in at least one precedent, where we wrote that if the petitioner was "suggest[ing] that his ineffective-assistance-of-appellate-counsel claims also should be considered under *Martinez*, we decline to do so." *Reed v. Stephens*, 739 F.3d 753, 778 n.16 (5th Cir. 2014). We do not interpret the court's declining to consider the issue to have been based on discretion. We must consider Section 2254 claims when they are non-defaulted, exhausted, and otherwise properly raised. Moreover, *Reed* included one citation to an opinion holding that *Martinez* made an "unambiguous holding" to the effect that "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." *Id.* (quoting *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013)).

In light of this controlling precedent from our court, reasonable jurists at least in this circuit would not debate the district court's conclusion that this claim of error arising from the response to the jury note was procedurally defaulted because Davila failed to exhaust it in state court proceedings. *See Blue v. Thaler*, 665 F.3d 647, 669 (5th Cir. 2011) ("Because both of Blue's arguments with respect to the burden of proof on the mitigation special issue are foreclosed by Fifth Circuit precedent, the correctness of the district court's decision to reject them is not subject to debate among jurists of reason.").

Finally, Davila challenges the district court's resolution of his motion for a stay and abeyance and motion for an evidentiary hearing. Davila sought a stay and abeyance so he could exhaust this claim in state court. A stay and abeyance is warranted when the petitioner shows there was good cause for the failure to exhaust the claim in state court, the claim is not plainly meritless, and there is no indication the failure was for delay. *See Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010). We review the denial of a stay and abeyance for abuse of discretion. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). The district court did not abuse its discretion because this claim is meritless, as

discussed above, and there was no showing of good cause. Additionally, the district court did not abuse its discretion in denying Davila's request for an evidentiary hearing under Section 2254(e). *See Clark v. Johnson*, 202 F.3d 760, 765–66 (5th Cir. 2000). Here, the record itself precludes habeas relief and thus, a hearing would not enable Davila to prove factual allegations in his petition that, if true, would entitle him to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). We deny a COA on this claim.

### III.     *Ineffective Assistance of Trial Counsel Claim*

Davila claims his trial counsel was ineffective in failing to make a proper investigation of his background or present a mitigation case to the jury at the punishment phase under *Wiggins v. Smith*, 539 U.S. 510 (2003). This claim was presented to the Texas Court of Criminal Appeals and rejected. The district court reviewed the state court's decision[2] and held the state court's resolution of the claim was not contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668, and subsequent caselaw. Under *Strickland*, an ineffective assistance of trial counsel claim requires deficient performance and prejudice. *Id.* at 690–92. Deficient performance is conduct that falls below an objective standard of reasonableness. *Id.* at 688. Counsel must conduct a reasonable investigation into a defendant's background in order to make reasonable, strategic decisions about how to present, or whether to present, the mitigation case. *See Wiggins*, 539 U.S. at 521–23. To show prejudice, Davila must show "a reasonable probability that . . . the result of the proceeding would have been different. A reasonable probability is a probability

---

[2] To the extent that Davila argues the district court was not limited to the state habeas court's record under *Cullen v. Pinholster*, 563 U.S. 170 (2011), because he claims his state habeas counsel was ineffective, we reject that claim. *See Escamilla v. Stephens*, 749 F.3d 380, 394–95 (5th Cir. 2014); *Ross v. Thaler*, 511 F. App'x 293, 305 (5th Cir. 2013).

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To determine prejudice in the context of mitigation evidence, the reviewing court "reweigh[s] the evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 539 U.S. at 534. Our limited review is whether reasonable jurists would debate the district court's decision that the Texas court did not unreasonably apply *Strickland* and *Wiggins*.

Davila argues that his trial attorneys were deficient because they failed to hire a mitigation specialist. Davila relies on the ABA Guidelines to claim that the failure to hire a mitigation specialist was deficient performance. The ABA Guidelines are only guides, not requirements, to determine whether counsel's performance was reasonable. *See Strickland*, 466 U.S. at 688. Here, trial counsel worked together with a clinical psychologist, Dr. Emily Fallis, to investigate and evaluate mitigation evidence. Trial counsel conducted the factual investigation into Davila's background and childhood themselves, with the help of a fact investigator, because they wanted to build relationships with potential witnesses. Counsel interviewed at least 12 family members in addition to friends and employers. Counsel obtained Davila's school records and spoke to former teachers. After conducting initial interviews, counsel would send certain persons to be interviewed by Fallis. The interviews Fallis conducted allowed her to present her testimony more effectively about the impact of Davila's upbringing and background. Counsel also had Davila examined by another psychologist, neurologist, and hired another doctor with expertise in gang activity. Trial counsel made a reasonable decision to maintain responsibility for the factual investigation and to seek the assistance of an expert, Fallis, in evaluating and presenting the mitigation evidence.

Davila also argues that counsel was deficient by failing to uncover additional mitigation evidence from four extended family members identified by mitigation specialist, Toni Knox, who testified at the state habeas

proceeding regarding trial counsel's deficient performance.  As the district court noted, two of those individuals were contacted at the time of trial but refused to testify or were otherwise uncooperative.  We agree with the district court that counsel was not deficient for leaving the uncooperative family members uncalled.  Additionally, as for the other two family members, counsel was not necessarily unreasonable for failing to interview them.  "Questioning a few more family members . . . can promise less than looking for a needle in a haystack, when a lawyer truly has reason to doubt there is any needle there." *Rompilla v. Beard*, 545 U.S. 374, 389 (2005).  Based on the investigation that counsel conducted, it was reasonable to doubt that interviews with these two extended family members would result in different, new information beyond what they already had discovered.

Furthermore, regarding any possible deficient performance in failing to interview the other two witnesses whom Knox identified, the district court held that Davila could not show prejudice.  The court concluded that the mitigation evidence Knox presented from these witnesses was of the same kind trial counsel had presented: Davila's mother was neglectful and abusive towards her children.  Davila claims that the uncovered mitigation evidence would have shown more details of the type of physical abuse Davila and his sister endured.  As the district court noted, such an argument "comes down to a matter of degrees" and is "even less susceptible to judicial second-guessing." *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999).  The additional mitigation evidence presented by Knox "was largely cumulative and differed from the evidence presented at trial only in detail, not in mitigation thrust." *See Villegas v. Quarterman*, 274 F. App'x 378, 384 (5th Cir. 2008).

Additionally, when compared to the strong aggravating evidence, any incremental increase in mitigation evidence would not create "a reasonable probability that . . . the result of the proceeding would have been different."

*See Wiggins*, 539 U.S. at 534. Not only were the facts of Davila's shooting of Annette and Queshawn Stevenson aggravating, but he also had a serious criminal history and had admitted to murdering another person days before the birthday party shooting. Furthermore, he attacked and seriously injured a guard while trying to escape jail prior to his trial. Finally, as the district court noted, evidence demonstrating abuse to Davila and his sister could undermine any possible mitigating effect, because his sister made different choices than Davila despite growing up in the same environment. *See Guevara v. Stephens*, 577 F. App'x 364, 369 (5th Cir. 2014).

Reasonable jurists would not debate the district court's conclusion that Davila's attorneys conducted a reasonable investigation, made reasonable strategic choices, and that any other available mitigation evidence could not outweigh the aggravating evidence. We deny a COA on this claim.

## IV.    *Suppression Issues*

Davila presented four claims to the district court involving suppression of statements he made. He has grouped them together in his application for a COA. They seek suppression of Davila's oral and written statements under the Fourth, Fifth, and Sixth Amendments.

First, we address his Fourth Amendment claims. The district court held that *Stone v. Powell*, 428 U.S. 465, 494 (1976), prevented review of Davila's Fourth Amendment claims because Davila had an opportunity to fully and fairly litigate these in state court.

Davila argues that *Stone* has never been applied by the Supreme Court in a capital case. The district court noted that panels of our court have applied *Stone* in capital cases. *See, e.g.*, *ShisInday v. Quarterman*, 511 F.3d 514, 524–25 (5th Cir. 2007). The Supreme Court has never indicated that *Stone* does not apply in capital cases. Davila argues that AEDPA should have abrogated

the rule in *Stone.* Our circuit has continued to apply *Stone* after AEDPA to capital cases. *See id.*; *see also Busby v. Dretke*, 359 F.3d 708, 722–23 (5th Cir. 2004); *Balentine v. Quarterman*, 324 F. App'x 304, 306 (5th Cir. 2009). In light of our binding precedent, reasonable jurists would not debate the district court's determination that *Stone* barred Davila's Fourth Amendment claims if he had a full and fair opportunity to litigate them in state court.

The district court noted that Davila had moved to suppress all his oral and written statements. Prior to trial, the state court held a hearing and heard evidence on Davila's Fourth Amendment claims. The state court denied Davila's motion to suppress. Davila again raised the validity of his arrest warrant during the state trial, and the trial court denied his motion again on a different basis. On direct appeal, the Texas Court of Criminal Appeals affirmed the trial court's rulings. Jurists of reason would not debate that Davila was given a full and fair opportunity to litigate his Fourth Amendment claims. *See Janecka v. Cockrell*, 301 F.3d 316, 320–21 (5th Cir. 2002).

For his Fifth and Sixth Amendment claims, Davila argues that his written statements were not voluntary because he was in "custodial interrogation for seven hours" without anything to eat or drink and without using the restroom. This claim was presented during state habeas proceedings, and the state court resolution of it must be given AEDPA deference. Whether a confession is voluntary is ultimately a legal question, which sometimes involves subsidiary mixed issues of law and fact, and accordingly, we review it under Section 2254(d)(1). *See Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). Any purely factual sub-questions are presumed correct, unless shown to be unreasonable determinations of fact by clear and convincing evidence. *See id.*; 28 U.S.C. § 2254(d)(2), (e)(1). To determine voluntariness, we consider the "totality of the circumstances." *Rogers v. Quarterman*, 555 F.3d 483, 491 (5th Cir. 2009). "A statement is involuntary if

there existed official, coercive conduct that made it unlikely the statement was a product of the individual's free choice." *Id.*

The district court determined that the state court's evaluation of the voluntariness of Davila's confession was not an unreasonable application of, or contrary to, clearly established Supreme Court precedent. The state court noted that Davila never requested food, a drink, or a restroom break while he was in custody. Davila points to no clearly established federal law that the state court unreasonably applied in deciding that these facts did not show coercive or improper activity. The district court's resolution would not be debated among jurists of reason. We deny the COA on the suppression claims.

### V.     *Claims Regarding the Texas Death Penalty Scheme*
#### a. *Violation of the Fifth Amendment Grand Jury Guarantee*

Davila claims that the Texas death penalty scheme, Article 37.071 of the Texas Code of Criminal Procedure, violates the Fifth Amendment because the special issues considered at the punishment phase are not presented to the grand jury that returns the indictment. Both the Texas Court of Criminal Appeals and the district court rejected this claim because the Fifth Amendment's guarantee to a grand jury indictment has not been extended to the states through the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994). Reasonable jurists would not debate the district court's resolution in light of *Albright*. *See Kerr v. Thaler*, 384 F. App'x 400, 402–03 (5th Cir. 2010). We deny the COA.

#### b. *Violation of the Eighth and Fourteenth Amendments*

Davila argues that Article 37.071 violates the Eighth and Fourteenth Amendments. Under Texas's death penalty statute, capital jurors first consider a future dangerousness special issue set out in the statute. TEX. CODE

No. 15-70013

CRIM. PROC. art. 37.071 § 2(b)(1).  The jury is instructed that it cannot answer "yes" to the future dangerousness issue unless it agrees unanimously, and cannot answer "no" unless ten or more jurors agree.  *Id.* § 2(d)(2).  If the jury answers "yes" to the future dangerousness special issue, the jury is to answer a mitigation special issue that also is in the statute.  *Id.* § 2(e)(1).  For that special issue, the jurors are instructed that they cannot answer "no" unless they all agree and cannot answer "yes" unless ten or more jurors agree.  *Id.* § 2(f)(2).  This system is called the "10-12 Rule."  *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000).  The judge is to sentence the defendant to death if the jury answers the future dangerousness issue "yes" and the mitigation issue "no."  TEX. CODE CRIM. PROC. art. 37.071 § 2(g).  If the jury answers "no" to the future dangerousness issue, "yes" to the mitigation issue, or "is unable to answer" either issue, then a life sentence results.  *Id.*; *see also Blue*, 665 F.3d at 669 (explaining TEX. CODE CRIM. PROC. art. § 37.071).  Neither the court nor the parties may inform jurors that their failure to agree on an answer will result in a life sentence.  *See* TEX. CODE CRIM. PROC. art. 37.071 § 2(a)(1), (g).

First, Davila claims the 10-12 Rule misleads the jury on its role in the sentencing process because the jury is not told "a single juror is statutorily permitted to cause a sentence of life" by preventing unanimous agreement to the future dangerousness special issue.  He argues the Texas death penalty statute, therefore, runs afoul of *Caldwell v. Mississippi*, 472 U.S. 320 (1985).  We have already rejected this argument.  *See Druery v. Thaler*, 647 F.3d 535, 544 (5th Cir. 2011).

Second, he claims that the 10-12 Rule violates his right to individualized sentencing under *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990).  Davila asserts that a reasonable juror could believe that his vote on the sentencing special issues is meaningless unless

16

enough jurors agree with him because there is no instruction on the effect of a lack of unanimity. We have also rejected this claim. *See Reed*, 739 F.3d at 779.

Davila argues that the post-1991 Texas death penalty scheme, which now includes a true mitigation special issue under *Penry v. Lynaugh*, 492 U.S. 302 (1989), has not been squarely addressed by our court. Yet, we have considered the 10-12 Rule since the 1991 changes to Article 37.071 and have held that the mitigation special issue does not violate *Mills* or *McKoy*. *See Allen v. Stephens*, 805 F.3d 617, 624, 631–33 (5th Cir. 2015). The Texas death penalty scheme does not create the possibility that reasonable jurors would think they all had to agree on particular mitigating evidence like the statute in *Mills* did; instead, each juror can independently consider mitigating evidence. *See* 486 U.S. at 384; *see also Druery*, 647 F.3d at 543 & n.5. We have also held that this argument is barred by *Teague v. Lane*, 489 U.S. 288 (1989). *See Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005). Accordingly, reasonable jurists would not debate the district court's resolution of this claim.

> ### c. *Violation of the Sixth Amendment Right to Proof Beyond a Reasonable Doubt*

Finally, Davila argues that Article 37.071 is unconstitutional under the Sixth Amendment because it does not place the burden on the State to prove a lack of mitigating evidence beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). This claim was rejected by the Texas Court of Criminal Appeals. The district court rejected relief on this claim based on our precedent. *See Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005).

Davila, in a letter directing us to recent relevant authority, cites to the decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016). There, the Supreme Court held that Florida's capital sentencing scheme violated *Ring*, 536 U.S. 584.

No. 15-70013

Under the Florida scheme, a jury makes an advisory verdict while the judge makes the ultimate factual determinations necessary to sentence a defendant to death. *Hurst*, 136 S. Ct. at 621–22. The Court held that procedure was invalid because it "does not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. Davila recognizes that Texas does require jurors to make all factual determinations necessary for a death sentence. His argument is that the scheme is unconstitutional because jurors do not have to find the absence of mitigating circumstances beyond a reasonable doubt. Our precedent precludes this claim. *Rowell*, 398 F.3d at 378. Reasonable jurists would not debate the district court's resolution, even after *Hurst*. *See Avila v. Quarterman*, 560 F.3d 299, 315 (5th Cir. 2009).

\* \* \*

We DENY the COA as to all claims. All pending motions are denied.

18