# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70008

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2017

Lyle W. Cayce
Clerk

EDWARD LEE BUSBY,

   Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

   Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:09-CV-160

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:*

Petitioner Edward Lee Busby requests a certificate of appealability (COA) authorizing him to appeal the district court's denial of federal habeas relief on three separate claims: (1) that he is intellectually disabled and therefore ineligible for execution under *Atkins v. Virginia*,[1] (2) that he received ineffective assistance of direct appeal counsel, and (3) that his trial counsel was

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 536 U.S. 304 (2002).

ineffective by failing to conduct an adequate sentencing investigation or to present an adequate mitigation case during the penalty phase of trial. We grant Busby's request for a COA on all three claims.

**I**

Edward Busby was convicted of capital murder in Texas state court and sentenced to death for the kidnapping, robbery, and murder of an elderly woman.[2] The district court's opinion recounts the factual and procedural history of Busby's case.[3] We briefly set forth the matters relevant to the present motion.

The Texas trial court appointed Jack Strickland to represent Busby at trial. Busby contends that Strickland waited approximately nineteen months to assemble a mitigation investigation team and hired a mitigation specialist days before voir dire. He further contends that Strickland hired Dr. Timothy Proctor, a psychologist and mental health expert, a week after voir dire commenced.

Busby's trial began in early November 2005. Relevant to this appeal, Strickland attempted to introduce statements made by Busby's co-defendant, Kathleen Latimer, purportedly to introduce doubt as to Busby's intent or culpability. The trial court excluded the statements as inadmissible hearsay. The jury found Busby guilty.

During the punishment phase, Strickland introduced testimony from five lay witnesses—Busby's two sisters, Busby's special education teacher, and two school administrators. An expert, Dr. Proctor, testified, and a video containing images of Texas maximum security prisons was shown to the jury.

---

[2] *Busby v. State*, 253 S.W.3d 661, 663-64 (Tex. Crim. App. 2008), *cert. denied,* 555 U.S. 1050 (2008).

[3] *See generally Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460 (N.D. Tex. Mar. 10, 2015).

No. 15-70008

Dr. Proctor testified that Busby had a severe antisocial personality disorder, and that Busby posed a high risk of future dangerousness to society. The jury answered the issues submitted to them in a way that mandated the death penalty under Texas law, and Busby was sentenced to death.

Busby, still represented by Strickland, appealed. Strickland did not appeal the exclusion of Latimer's statements, and Busby's conviction and sentence were affirmed on direct appeal.

Represented by new counsel, David Richards, Busby sought state habeas relief. Richards initially asserted an ineffective-assistance-of-trial-counsel (IATC) claim regarding the adequacy of Strickland's mitigation investigation. Richards alleged that "disputed questions of material fact" existed as to the claim and sought (and received) funding to investigate. Richards later withdrew the IATC claim, stating that he was "convinced that adequate pretrial mitigation was conducted because no significant additional mitigating evidence would have been discovered." The state habeas trial court entered supplemental findings that Richards's withdrawal of the claim was "in keeping with the highest standards of ethical conduct." The Texas Court of Criminal Appeals (TCCA) adopted the findings and dismissed Busby's petition as to the remaining grounds.

Represented by new counsel, Busby then filed a federal habeas petition pursuant to 28 U.S.C. § 2254. This petition alleged seven claims, including the three relevant here. Determining that several of Busby's claims were unexhausted, the district court stayed proceedings to permit Busby to exhaust the claims in state court. The TCCA dismissed Busby's subsequent application as an abuse of the writ, and Busby returned to federal court.

3

No. 15-70008

During the abeyance period, the Supreme Court issued *Trevino v. Thaler*.[4] The Supreme Court had previously held in *Martinez v. Ryan*:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.[5]

In *Trevino*, the Court held that the rationale of *Martinez* applied to Texas convictions when ineffective-assistance-of-counsel claims may first be effectively raised in state habeas review.[6] After supplemental briefing and an evidentiary hearing pertaining to the import of *Martinez* and *Trevino*, the district court denied relief and further denied Busby's request for a COA. Busby now seeks a COA from this court.

## II

The standards of review in a federal habeas proceeding are governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. A COA should issue only when the petitioner makes "a substantial showing of the denial of a constitutional right."[7] "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[8] When a district court denies a habeas claim as procedurally defaulted, a prisoner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

---

[4] 133 S. Ct. 1911 (2013).

[5] 132 S. Ct. 1309, 1320 (2012).

[6] *Trevino*, 133 S. Ct. at 1919-21.

[7] 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

[8] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[9]  In either case, "[a] prisoner seeking a COA must prove something more than the absence of frivolity," though he need not prove that he will ultimately prevail on appeal.[10] The Supreme Court has explained that a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[11]  In death penalty cases, "any doubt as to whether a COA should issue . . . must be resolved in favor of the petitioner."[12]

## III

Busby first contends that he is entitled to a COA on his claim under *Atkins v. Virginia* that he is ineligible for the death penalty by reason of intellectual disability.  The district court rejected Busby's *Atkins* claim, holding that it was procedurally barred because the TCCA rejected the claim on an "independent and adequate state procedural ground"[13]—as an abuse of the writ pursuant to Texas Code of Criminal Procedure Article 11.071 § 5(c)—and that Busby failed to show "by clear and convincing evidence that he is mentally retarded" so as to meet the "actual innocence" exception to procedural default.

In denying Busby's application, the TCCA stated:

> We have reviewed this subsequent application and find that the allegations fail to satisfy the requirements of Article 11.071,

---

[9] *Id.*

[10] *Miller-El*, 537 U.S. at 338 (internal quotation marks omitted).

[11] *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

[12] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

[13] *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Rocha v. Thaler*, 626 F.3d 815, 820-21 (5th Cir. 2010).

No. 15-70008

§ 5(a). Accordingly, we dismiss the application as an abuse of the writ without considering the merits of the claims.[14]

The State argues, and the district court agreed, that the plain language of the TCCA's dismissal—"without considering the merits of the claims"—indicates that the TCCA did not reach the merits of Busby's *Atkins* claim. The State further notes that we have "consistently held that Texas' abuse-of-writ rule is ordinarily an adequate and independent procedural ground on which to base a procedural default ruling."[15]

Busby responds that the TCCA's dismissal was merely boilerplate and that the TCCA actually reviews *Atkins* claims raised in successive petitions on the merits pursuant to Article 11.071 § 5(a)(3),[16] which requires an applicant to demonstrate

> by clear and convincing evidence, *but for* a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.[17]

We have previously explained that Texas's abuse-of-the-writ doctrine does not preclude federal jurisdiction in the *Atkins* context because, in denying an *Atkins* claim as an abuse of the writ under § 5(a)(3), the TCCA necessarily

---

[14] *Ex parte Busby*, No. WR-70,747-02, 2013 WL 831550, *1 (Tex. Crim. App. Mar. 6, 2013).

[15] *Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005) (internal quotation marks omitted).

[16] *See Ex parte Blue*, 230 S.W.3d 151, 162 (Tex. Crim. App. 2007) ("We hold that a state habeas applicant alleging mental retardation for the first time in a subsequent writ application will be allowed to proceed to the merits of his application under the terms of Section 5(a)(3)—at least so long as he alleges and presents, as a part of his subsequent pleading, evidence of a sufficiently clear and convincing character that we could ultimately conclude, to that level of confidence, that no rational factfinder would fail to find he is in fact mentally retarded.").

[17] TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a)(3) (West) (emphasis added).

No. 15-70008

conducts a merits review.[18]  Accordingly, reasonable jurists could disagree with the district court's conclusion that Busby's claim was procedurally barred.

Busby must still, however, show that reasonable jurists could debate whether he has presented a "valid claim of the denial of a constitutional right"[19]—here, imposition of the death penalty on an intellectually disabled prisoner in violation of *Atkins*.  In *Atkins*, the Supreme Court left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences."[20]  Texas developed its *Atkins* framework in *Ex parte Briseno*.[21]  There, the TCCA explained that Texas adopts the American Association of Mental Retardation (AAMR) definition of intellectual disability, which requires "(1) significantly subaverage general intellectual functioning, defined as an IQ of about 70 or below; (2) accompanied by related limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18."[22]  "A failure of proof on any one of these three elements will defeat an *Atkins* claim."[23]  With respect to prong one, the TCCA recognizes that IQ testing instruments have a measurement error of approximately five points and acknowledges that "any score could actually represent a score that is five points higher or five points lower than the actual IQ."[24]

Busby argues that his most recent IQ score of 74 on the Weschler Adult Intelligence Scales—Fourth Edition (WAIS-IV) satisfies the first *Briseno* prong.  He argues that this score is the most reliable because it was

---

[18] *Garcia v. Stephens*, 757 F.3d 220, 225 (5th Cir. 2014); *Ladd v. Stephens*, 748 F.3d 637, 641 n.10 (5th Cir. 2014); *Rivera v. Quarterman*, 505 F.3d 349, 359-60 (5th Cir. 2007).

[19] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[20] *Atkins v. Virginia*, 536 U.S. 304, 317 (2002) (alteration in original).

[21] 135 S.W.3d 1 (Tex. Crim. App. 2004).

[22] *Blue v. Thaler*, 665 F.3d 647, 657-58 (5th Cir. 2011) (internal quotation marks omitted) (citing *Briseno*, 135 S.W.3d at 7).

[23] *Id.* at 658.

[24] *Ex parte Hearn,* 310 S.W.3d 424, 428 (Tex. Crim. App. 2010).

administered close to the test's development date, and because the defense expert detected no malingering, i.e., intentional efforts to misrepresent his intellectual ability. Busby claims that his prior IQ scores—77, 79, and 81[25]— bolster his claim of intellectual disability once adjusted downward to account for various structural testing flaws, including the practice effect and non-verbal nature of the tests. Primarily, Busby argues for downward adjustment to account for a phenomenon known as the "Flynn effect," in which IQ scores for a given test rise over time as the testing instrument becomes outdated. Busby contends that in denying relief, the TCCA and district court essentially applied the type of "bright-line IQ cutoff" condemned by the Supreme Court in *Hall v. Florida*.[26] As to the second and third *Briseno* factors, Busby provided evidence of his adaptive functioning, including grade school records and affidavits from teachers, family, and friends, each intended to indicate that Busby lacked the adaptive functioning skills contemplated in *Briseno*.

The State counters that the Flynn Effect has not been accepted as scientifically valid in this circuit or by the TCCA and thus provides no basis for downward adjustment. The State further argues that Busby's recent score of 74 is not reliable, given its deviation from his previous higher IQ scores and Busby's potential incentive to perform poorly. The State notes that the Texas scheme is distinguishable from the Florida scheme at issue in *Hall*, which required a petitioner to demonstrate an unadjusted score of 70 before

---

[25] Busby's prison records show that he was administered an "unknown" IQ test in 2001, on which he scored a 96. However, while cross-examining Dr. Proctor, the State offered to "forget about the 96 IQ" and stated that there was "probably . . . something wrong with the results."

[26] 134 S. Ct. 1986, 2001 (2014).

additional evidence of intellectual disability could be considered.[27]  Finally, the State produces conflicting evidence of Busby's adaptive functioning skills, and argues that Busby's evidence is "self-serving" and "anecdotal" and not indicative of Busby's abilities prior to the age of 18.

We conclude that reasonable jurists could debate whether Busby has subaverage intellectual functioning.  We therefore conclude that reasonable jurists could debate whether Busby has presented a viable *Atkins* claim, and grant Busby a COA on this issue.

**IV**

Busby next contends that he is entitled to a COA on his claim that his direct appeal counsel, Jack Strickland, the same attorney who represented him at trial, was ineffective for failing to challenge the trial court's exclusion of Kathleen Latimer's statements.  He argues that his initial state habeas counsel, David Richards, had a conflict of interest based on his personal and professional relationship with Strickland.  Finding the claim unexhausted, the district court stayed the case so that Busby could present his claims to the state court.  Busby's federal habeas counsel filed a subsequent application with the TCCA, which was dismissed as an abuse of the writ without consideration on the merits.  The district court subsequently concluded that this claim was procedurally defaulted, rejecting Busby's argument that the limited exception to procedural default set forth in *Martinez v. Ryan*[28] and *Trevino v. Thaler*[29] extends to ineffective-assistance-of-appellate-counsel (IAAC) claims. Alternatively, the district court concluded the claim lacked merit.

---

[27] *Id*. at 1994.  After the conclusion of briefing in this case, we held that *Briseno* remains a constitutionally permissible interpretation and application of *Atkins*.  *Henderson v. Stephens*, 791 F.3d 567, 585-86 (5th Cir. 2015), *petition for cert. filed*, (U.S. Jan. 28, 2016) (No. 15-7974).

[28] 132 S. Ct. 1309 (2012).

[29] 133 S. Ct. 1911 (2013).

No. 15-70008

The district court relied on this court's decision in *Reed v. Stephens*,[30] in which we denied a COA on an IAAC claim that was procedurally defaulted, stating that "[t]o the extent Reed suggests that his ineffective-assistance-of-appellate-counsel claims also should be considered under *Martinez*, we decline to do so."[31] Busby essentially argues that our decision in *Reed* was dicta and not binding.

We note that there is a split among the Circuits as to whether the rationale of *Martinez*/*Trevino* extends to ineffective assistance of direct appeal counsel. Post-*Trevino*, in a case that did not involve a potential conflict of interest between collateral review and direct appeal counsel, the Sixth Circuit held that "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of *appellate* counsel."[32] The Eighth Circuit has also refused to extend the *Martinez/Trevino* rationale to excuse procedural default of a claim of ineffective assistance of direct appeal counsel where the only potential conflict of interest was a tenuous claim that state habeas counsel's "titular boss" had "helped" on the petitioner's case at trial.[33] The Tenth Circuit has likewise read the exception narrowly.[34] The

---

[30] 739 F.3d 753 (5th Cir. 2014).

[31] *Id.* at 778 n.16.

[32] *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (emphasis added).

[33] *Dansby v. Hobbs*, 766 F.3d 809, 827-28 (8th Cir. 2014). Though the court considered the conflict issue primarily under *Maples v. Thomas*, 132 S. Ct. 912 (2012), it also expressly declined to extend *Martinez/Trevino* to claims of IAAC, noting that "[m]ost circuits to address the point have declined to extend *Martinez* to claims alleging ineffective appellate counsel, and we agree." *Id.* at 833.

[34] *See Banks v. Workman,* 692 F.3d 1133, 1148 (10th Cir. 2012) (noting that the court understood *Martinez* to apply only to claims of ineffective assistance of trial counsel, and not of appellate counsel, though noting that the exception would not apply in any event because Oklahoma law permitted the assertion of an ineffectiveness claim on direct appeal); *see also Fairchild v. Trammell*, 784 F.3d 702, 722-23 (10th Cir. 2015) (declining to apply *Trevino* to Oklahoma's procedural framework, which allows ineffective-assistance-of-trial-counsel claims to be fully developed); *Decker v. Roberts*, 530 F. App'x 844, 845 (10th Cir. 2013) (unpublished) (noting that *Martinez* and *Trevino* "hold that the ineffectiveness of post-

No. 15-70008

Ninth Circuit has reached the opposite conclusion, extending *Martinez* and *Trevino* to claims of ineffective assistance of direct appeal counsel as well.[35] We note also that some of the language in *Martinez* may support Busby's contention that the case's logic should be extended because the same sort of double ineffectiveness would "deprive the defendant of any opportunity at all for review" of certain issues.[36]  Further, the Supreme Court recently granted certiorari on the issue of whether the rule established in *Martinez* and *Trevino* also applies to procedurally defaulted, but substantial, ineffective-assistance-of-appellate-counsel claims.[37]

Reasonable jurists could debate the district court's conclusion that Busby's ineffective-assistance-of-appellate-counsel claim was procedurally defaulted.  The district court concluded, in the alternative, that Busby's ineffective-assistance-of-appellate-counsel claim was not substantial and that Busby's initial state habeas counsel, David Richards, was not ineffective in failing to raise an ineffective-assistance-of-counsel claim.  Reasonable jurists would find the district court's alternative holdings debatable.  We grant Busby's request for a COA on his IAAC claim.

## V

Busby also seeks a COA on the district court's denial of his ineffective-assistance-of-trial-counsel (IATC) claim.  Busby argues that his

---

conviction counsel may not be used to excuse a procedural default when the underlying claim is for something other than the ineffective assistance of *trial* counsel").

[35] *See Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013) (holding that *Martinez* extends to Sixth Amendment ineffective-assistance-of-appellate-counsel claims).

[36] *See Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012) (likening the initial-review collateral proceeding to a direct appeal and noting that "an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims").

[37] *Davila v. Davis*, 650 F. App'x. 860 (5th Cir. 2016) (per curiam) (unpublished), *cert. granted*, 2017 WL 125677 (U.S. Jan. 13, 2017) (No. 16-6219).

trial counsel, Jack Strickland, provided ineffective assistance in failing to conduct a timely sentencing investigation, which led to Strickland's alleged failure to present an adequate mitigation case at punishment. Busby concedes that his claim is procedurally barred as it was not presented in his initial state habeas petition, but argues that the default is excused under *Martinez v. Ryan*[38] and *Trevino v. Thaler*.[39]

The Supreme Court held in *Martinez* that a habeas petitioner may establish cause for procedural default of an IATC claim "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*."[40] To overcome the default, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."[41]

The district court held both that Busby failed to establish that his initial state habeas counsel—David Richards—was deficient under *Strickland* and further, that Busby failed to show that his underlying IATC claim was substantial. Specifically, the district court determined that trial counsel's alleged ineffectiveness did not prejudice Busby, reasoning that Busby's additional evidence was largely cumulative of that presented to the jury. The district court observed that the declarations from multiple individuals regarding Busby's mental state were "weakened" because the declarations were "untested, unsworn, and in some cases, undated."

---

[38] 132 S. Ct. 1309 (2012).

[39] 133 S. Ct. 1911 (2013).

[40] 132 S. Ct. at 1318 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[41] *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)) (describing standards for certificates of appealability to issue).

Busby contends that the district court improperly discredited the declarations, which he contends were submitted in their proper form for purposes of federal litigation, and that the new mitigation evidence is not merely cumulative, but "paints an entirely different picture of Busby from the one presented to the jury." Busby argues that "substantial additional mitigation evidence" was easily discoverable, but "apparently unknown to both trial counsel and state habeas counsel," and that "[a]fter a very limited investigation, state habeas counsel" filed a state habeas petition that failed to raise an IATC claim.

The State responds that Busby has failed to show, or rebut the district court's conclusion, that Busby was not prejudiced. The State further asserts that Busby's IATC claim is meritless, and thus, not "substantial" as required by *Martinez*.

Reasonable jurists could debate whether Busby's state habeas counsel, Richards, was ineffective in failing to present an IATC claim regarding Strickland's allegedly deficient mitigation investigation. As the district court noted, Richards initially acknowledged that fact disputes existed regarding the adequacy of Strickland's mitigation investigation. He filed affidavits with the state court, including one from Linda Sanders, the mitigation expert hired in Busby's case, which opined that Strickland's inquiry into mitigation was untimely and could not have allowed for an adequate investigation.

Reasonable jurists could further debate whether Busby's underlying IATC claim is substantial, "which is to say that . . . the claim has some merit."[42] IATC claims are governed by the *Strickland* two-step, which requires Busby to

---

[42] *Id.* While we recognize that the district court did not decide whether trial counsel was ineffective, instead concluding that Busby's IATC claim was not substantial due to lack of prejudice, as it was entitled to do, we discuss the ineffectiveness issue because Busby still bears the burden to "state a valid claim of the denial of a constitutional right" should we conclude that reasonable jurists could debate the district court's procedural ruling.

show that his trial counsel's representation "fell below an objective standard of reasonableness,"[43] and that "he was prejudiced by the deficient performance."[44] A showing of prejudice requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[45] To make this determination, federal habeas courts must weigh the evidence adduced in the habeas proceeding and that adduced at trial against the aggravating evidence.[46]

The district court relied in part on the State's aggravating evidence and the circumstances of the instant offense to conclude that Busby was not prejudiced. Given the facts of this case, we cannot conclude that Busby's criminal history, coupled with the instant offense, would indisputably lead reasonable jurists to find this new mitigation evidence irrelevant as it pertains to the imposition of the death penalty.[47]

At this stage, we simply conclude that reasonable jurists could debate whether Busby has presented a substantial, or viable, IATC claim sufficient to excuse the procedural default and to merit a COA. Accordingly, we GRANT a COA on Busby's IATC claim.

\*     \*     \*

---

[43] *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[44] *Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014) (per curiam) (citing *Strickland*, 466 U.S. at 687).

[45] *Escamilla v. Stephens*, 749 F.3d 380, 388 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

[46] *Sears v. Upton*, 561 U.S. 945, 955-56 (2010).

[47] *Compare Escamilla*, 749 F.3d at 393 (granting a COA on the defendant's IATC claim premised on an inadequate mitigation investigation notwithstanding the "disturbing facts of the crime alone"), *with Newbury*, 756 F.3d at 874 (denying a COA on the defendant's claim that trial counsel conducted an inadequate mitigation investigation where the "State's evidence of [the defendant's] future dangerousness and moral culpability was overwhelming").

No. 15-70008

For the reasons expressed herein, we GRANT a COA authorizing Busby to appeal the district court's denial of habeas relief on his *Atkins* claim, his claim for ineffective assistance of trial counsel, and his claim alleging ineffective assistance of appellate counsel.